**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 27 2021

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JUSTIN BELL, individually and on behalf of**
**all others similarly situated,**                                   **PLAINTIFF**

v.                              Case No. 4:21-CV-*456-KGB*

**AMAZON LOGISTICS, INC.; and**
**HASKINS PRIME LOGISTICS, LLC**                          **DEFENDANTS**

This case assigned to District Judge *Baker*
and to Magistrate Judge *Kay*

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Justin Bell, individually, and on behalf of all persons similarly situated, by and

through counsel Chris Burks and Greg Ivester of WH, Law, files this Collective Action Complaint

("Complaint") against Defendants Amazon Logistics, Inc. ("Amazon") and Haskins Prime

Logistics, LLC ("Haskins") (together, "Defendants").

## I. INTRODUCTION

1.      This case is about Amazon's unlawful scheme to not pay its Delivery Associates in

accordance with applicable wage and hour laws by:

      a.   contracting out that responsibility to third-party Delivery Service Providers

         ("DSP"), such as Haskins Prime Logistics, LLC,

      b.   not paying for all hours that Delivery Associates worked, and

      c.   illegally failing to reserve jobs for Delivery Associates who are on military leave.

2.      Amazon jointly employs non-exempt Delivery Associates such as Plaintiff and members of the proposed Collective, to deliver packages to Amazon customers ("Delivery Associates").

3.      This case is about Amazon's failure to comply with applicable wage laws and to pay non-exempt Delivery Associates for all the time they worked – including overtime – as was required to deliver hundreds of Amazon packages each day and meet Amazon's delivery needs.

## II.  JURISDICTION AND VENUE

4.      Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.   This complaint is also brought under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.* This Court has jurisdiction of the USERRA count pursuant to 38 U.S.C. § 4323(b)(3).

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in and conduct business in this Judicial District and/or a substantial part of the events of omissions giving rise to Plaintiff's claims occurred within this district.

## III.  PARTIES AND RELEVANT BACKGROUND

6.      Plaintiff Justin Bell is a citizen of Arkansas and resides in Little Rock, Arkansas. Plaintiff worked for Defendants Amazon and Haskins Prime Logistics, LLC as a Delivery Associate in Arkansas from approximately March 2020 to May 2021.

7.      Defendant Amazon Logistics, Inc. is a corporation with principal offices in Seattle, Washington, which operates throughout the United States, including this Judicial District.

8.      Haskins Prime Logistics, LLC is a limited liability company with principal offices in Cabot, Arkansas.  Haskins provided Delivery Associates to Amazon as a Delivery Service Provider,

2

and pursuant to which Delivery Associates delivered Amazon packages from Amazon Delivery Stations to customers in Arkansas.

9.      The unlawful acts alleged in this Complaint were committed by Amazon and/or its officers, agents, employees, or representatives, while actively engaged in the management of Amazon's businesses or affairs, as well as by Haskins and/or its' officers, agents, employees, or representatives, while actively engaged in the management of Haskins' businesses or affairs.

10.      During times relevant, Amazon and Haskins acted as joint employers with respect to the Delivery Associates who delivered Amazon's packages.

11.      During times relevant, Plaintiff Bell was an employee of Amazon and Haskins and is covered by the FLSA.

12.      Defendants are employers covered by the FLSA.

13.      Defendants employ individuals, including Delivery Associates, in Arkansas.

14.      Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206-207.

15.      Defendants' annual gross sales exceed $500,000.

## IV.  COLLECTIVE DEFINITION

16.      Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former Delivery Associates who were paid by Haskins Prime Logistics, LLC, or any other Amazon Delivery Service Provider, to deliver packages for Amazon in Arkansas between May 27, 2018 and the last date any Delivery Associate performed work for Amazon and/or Haskins (the "FLSA Collective").

3

.17.     Plaintiff reserves the right to redefine the FLSA Collective prior to notice or certification, and thereafter, as may be warranted or necessary.

## V. FACTS

### Amazon and Haskins are Joint Employers

18.     Amazon is one of the largest businesses engaged in the interstate shipment of goods in the United States.

19.     Amazon holds itself out as a company able to transport goods across the United States to customers in a short time period.

20.     Amazon is widely known as a company able to transport goods across the United States to customers in a short time period.

21.     Amazon utilizes Delivery Service Providers, such as Haskins, to transport goods across the country to customers in a short time period.

22.     Amazon and Delivery Service Providers are in the business of delivering goods across the United States.

23.     Amazon relies on Delivery Service Providers, such as Haskins, for the essential services of transporting goods from Amazon warehouses to Amazon customers' doors as quickly as possible.

24.     Delivery Service Providers' delivery services are an integral part of Amazon's business purpose; without the use of Delivery Service Providers like Haskins, Amazon could not get their goods to their customers.

25.     Amazon attempts to shield itself from liability by utilizing companies, such as Haskins to provide the employees to transport their goods.

26.     Haskins provides delivery services for Amazon at one or more of Amazon's Delivery Stations through the use of Delivery Associates such as Plaintiffs and members of the proposed Collective.

27.     Delivery Associates are engaged to fulfill Amazon's nationwide delivery needs and make deliveries of goods from Amazon delivery stations to Amazon customers.

28.     Delivery Associates work in the transportation industry.

29.     The goods that Delivery Associates deliver are purchased by customers using Amazon's digital platform (the Amazon.com website).

30.     As required by Amazon, Haskins provides Delivery Associates, such as Plaintiff and other Delivery Associates, with a vehicle.

31.     Plaintiff Bell was hired in March 2020 and worked as a Delivery Associate for Amazon and Haskins until on or about May 2021 in one of Amazon and Haskins' Arkansas Delivery Stations making deliveries of packages on behalf of Amazon.

32.     The goods that Delivery Associates deliver from Amazon delivery stations to Amazon customers originate, or are transformed into their final condition, in a different state than the delivery state.

33.     The goods Delivery Associates deliver from Amazon delivery stations to Amazon customers are not transformed or modified during the shipping process.

34.     Delivery Associates deliver goods to Amazon customers in the same condition as they were shipped to the Amazon delivery station.

35.     Delivery Associates deliver goods to Amazon customers that were shipped around the United States.

36.     Delivery Associates handle goods that travel interstate.

37.     Delivery Associates are directly responsible for transporting goods in interstate commerce.

38.     Delivery Associates weekly drive vehicles with a Gross Vehicle Weight Rating of less than 10,000.00 (ten-thousand) pounds in order to deliver Amazon packages, which is vital to the commercial enterprise of the Delivery Service Provider Haskins and Amazon.

39.     Plaintiffs and other Delivery Associates are necessary in order for Amazon goods traveling interstate to make it to their final destination.

40.     At all relevant times, Amazon has been affiliated with and/or operating with Haskins, with respect to Plaintiff and other similarly situated employees such that Amazon and Haskins are the "joint employers" of Plaintiffs and other similarly situated employees.

41.     Delivery Associates are provided with and are required to use an Amazon provided ADP log-in, as service that assists with timekeeping, as well as to use Amazon software for navigation assistance and package scanning. This software also allows Amazon and Haskins to contact and track a Delivery Associate's movement and work progress.

42.     Amazon has direct access to the ADP and other software, which are given to and used by each Delivery Associate.

43.     Amazon and Haskins set the delivery route that the Delivery Associate will complete.

44.     Amazon assigns and provides routes to Delivery Service Providers, including Haskins.

45.     Amazon supervises and controls the work activities, work schedules, conditions and management of Delivery Associates.

46.     While Delivery Service Providers pay the Delivery Associates, Amazon has both influence and control over how Delivery Associates are paid.  For example, based on a news report of a "leaked internal email," in or around 2018, Amazon made "major changes to how some delivery drivers are paid to 'enable transparency and accuracy of pay'," including "prohibit[ing] [Delivery Service Providers] from paying drivers a flat daily rate." *See* Hayley Peterson, *Leaked email reveals Amazon is changing how delivery drivers are paid following reports of missing wages*, BUSINESS INSIDER, Oct. 2, 2018, https://www.businessinsider.com/amazonchanges-delivery-pay-practices-following-missing-wage-reports-2018-10.

47.     The United States Department of Labor's Wage & Hour Division have, during wage and hour investigations, determined that Delivery Service Providers and Amazon are joint employers as defined in §792.1(b)(3). *See, e.g.,* DOL Case ID: 1888753 and Case ID: 1824581.

## The Nature of the Relationship Between the Amazon, Haskins and other Delivery Service Providers

48.     Haskins is operated out of Cabot, Arkansas.

49.     Amazon entered into agreements with Haskins and directed a number of Delivery Service Providers to do services in Arkansas, to which Amazon is a party to the contracts with Haskins, and also with other Delivery Service Providers.

50.     Amazon directed and controlled the work of the Delivery Associates who were hired by Haskins and other DSPs in accordance with mandates as to work, conditions, and management that are set by Amazon.

51.     Haskins entered into a contract with Amazon pursuant to which Haskins delivers Amazon packages from Haskins and Amazon Delivery Stations located in Arkansas.

52.     On information and belief, Haskins maintained the right to directly enforce Amazon policies and procedures on the Delivery Associates hired by the DSPs.

53.     On information and belief, Amazons entered into agreements with other DSPs that had substantially similar terms to those set out in its contract with Haskins.

### The Nature of Plaintiffs and Delivery Associates' Work

54.     The nature of the work performed by Delivery Associates is similar and standardized at each of the Delivery Station(s) where the DSPs provide services for Amazon, as the nature of the work is centrally controlled and directed by Amazon and Haskins.

55.     Plaintiffs and other Delivery Associates began their shifts once they arrived at a facility to pick up their assigned vehicle or when they pick up their vehicle at an offsite facility.

56.     Once the vehicle was picked up, Plaintiffs and other Delivery Associates would pick up their assigned route, a gas card, and packages.

57.     Plaintiffs and other Delivery Associates were regularly scheduled to work five (5) or more days per week, with shifts that could last for up to ten (10) hours.

58.     Although shifts were scheduled for eight (8) hours per day, all of the work-related activities that Plaintiffs and other Delivery Associates were required to and did perform often took ten (10) or more hours per day to complete.

59.     Plaintiffs and other Delivery Associates were auto-deducted thirty (30) minutes of lunch/meal break per each shift and not paid for those thirty (30) minutes of work, regardless of whether Plaintiffs and other Delivery Associates logged-out of their ADP application to stop

working or whether they stayed logged-in to ADP and continued working for those (30) minutes, as many frequently did in order to be able to deliver all packages assigned to them per their shift.

60.     Further, Plaintiff observed that Delivery Associates regularly worked more than forty (40) hours a week.

61.     On average, Plaintiffs delivered approximately 200 Amazon packages per shift. Plaintiffs observed that other Delivery Associates routinely delivered a similar number of packages.

62.     Even after Plaintiffs were finished delivering their assigned packages, Defendants routinely required them to "rescue" other Delivery Associates by going to meet other Delivery Associates in the field to help deliver some of their packages. Plaintiffs were directed to "rescue" other Delivery Associates and observed other Delivery Associates do the same.

63.     Upon return to the Haskins and Amazon Delivery Station, Plaintiffs and other Delivery Associates had to unload their vehicles and check in with supervisors concerning the day's route.

64.     Plaintiffs observed other Delivery Associates routinely work similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

**Defendants Failed to Pay Delivery Associates Properly**

65.     Plaintiffs and other Delivery Associates regularly worked more than 40 hours per week.

66.     Plaintiffs and other Delivery Associates regularly worked five (5) or more days per week.

67.     Amazon and Haskins did not pay Plaintiff and other Delivery Associates for all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums.

68.     The pay policy to not pay for thirty (30) minutes of lunch time is set by Amazon, and it resulted in regularly not paying lawful overtime premiums for hours worked more than forty in a workweek to Delivery Associates.

69.     Amazon and Haskins pay policy, in which Plaintiff and other Delivery Associates are not compensated for all time worked and are not paid an overtime premium for all hours worked in excess of 40 per workweek, does not comply with the requirements of the Fair Labor Standards Act. *See Hickman v. TL Transportation LLC*, 317 F. Supp. 3d 890 (E.D. Pa. 2018) (granting summary judgment to the plaintiff in holding that a similar compensation scheme by another company that provided delivery services for Amazon violated the FLSA).

### The Failure to Properly Pay Delivery Associates Is Willful

70.     Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

71.     Despite being able to track Amazon packages to the second, Defendants have failed to make, keep and preserve records with respect to the Plaintiffs and other Delivery Associates sufficient to determine their lawful wages, actual hours worked, and other conditions of employment as required by law. *See, e.g.,* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

72.     Even though the FLSA and applicable state law requires overtime premium compensation for hours worked over 40 per week, Defendants do not pay Delivery Associates, such as Plaintiffs, proper overtime premium compensation for overtime hours worked.

73.     Defendants knew or, absent their own recklessness should have known, that the Delivery Associates were entitled to such overtime premiums.

74.     Defendants have failed to pay Plaintiffs and Delivery Associates all overtime compensation owed.

75.     By failing to pay lawful overtime compensation owed to Plaintiffs and other Delivery Associates, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

### VI. COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

76.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

77.     Plaintiffs desire to pursue their FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

78.     Plaintiffs and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked when they worked more than forty (40) hours per week and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

.79.     Specifically, Defendants failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

80.     The similarly situated employees are known to Amazon and Haskins and are readily identifiable and may be located through Amazon and Haskins business records and the records of any payroll companies Amazon and Haskins use.

81.     Amazon and Haskins employ many FLSA Collective Members throughout Arkansas. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## VII.
## COUNT I
### Violation of the FLSA
### (On Behalf of Plaintiff and the FLSA Collective)

82.     All previous paragraphs are incorporated as though fully set forth herein.

83.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

84.     Amazon is subject to the wage requirements of the FLSA because Amazon is an "employer" under 29 U.S.C. § 203(d).

85.     The FLSA recognizes that more than one entity can be responsible for wage violations as an employer.   Indeed, the FLSA's very broad definition of "employ"—which includes to "suffer or permit to work"—was designed to reach businesses, such as Amazon, that use middlemen such as Haskins, to directly employ Delivery Associates.

86.     The FLSA defines an employee as 'any individual employed by an employer, an employer to include any person acting directly or indirectly in the interest of an employer in relation to an employee, and the term employ to include to suffer or permit to work.' 29 U.S.C. §§ 203(e)(1), 203(d), 203(g).

87.     In 1945, the Supreme Court noted that "the term 'employee'" in the FLSA has "'the broadest definition . . . ever . . . included in any one act.'" *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)).

88.     The FLSA must be construed liberally because broad coverage is essential to accomplish its goals. One goal is to root out wage and hour violations by holding "businesses [that] allow work to be done on their behalf" and have the power "*to prevent wage and hour abuses responsible, regardless of indirect business relationships or business formalities.*" *See New York v. Scalia*, No. 1:20-cv1689-GHW, 2020 WL 5370871, *20 (S.D.N.Y. Sept. 8, 2020) (quoting Kati L. Griffith, The Fair Labor Standards Act at 80: Everything Old Is New Again, 104 Cornell L. Rev. 557, 571 (2019)) (emphasis added).

89.     At all relevant times, Amazon was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

90.     During all relevant times, Plaintiffs and Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

91.     Plaintiffs and Collective Members are not exempt from the requirements of the FLSA.

92.     Plaintiffs and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

93.     Amazon and Haskins compensation scheme applicable to Plaintiffs and Collective Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

94.     Amazon and Haskins knowingly and/or through willful ignorance, failed to compensate Plaintiffs and Collective Members for all hours worked when they worked in excess of forty (40) hours per week and failed to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

95.     Amazon and Haskins also failed to make, keep, and preserve records with respect to Plaintiffs and Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

96.     In violating the FLSA, Amazon and Haskins acted willfully and with reckless disregard of clearly applicable FLSA provisions.

97.     Pursuant to 29 U.S.C. § 216(b), employers such as Amazon and Haskins, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

# VIII.
## COUNT II
### Violations of USERRA
### (On Behalf of Plaintiff and the USERRA Class)

98.     At all relevant times, Plaintiff Bell was an employee of Defendants pursuant to 38 U.S.C. § 4303(4)(a).

99.     Plaintiff Bell is a member of the United States Army National Guard Reserve and is therefore entitled to the protections of USERRA. 38 U.S.C. § 4303(16).

100.    Defendants are private employers who "pays salary or wages for work performed or that has control over employment opportunities." 38 U.S.C. § 4303(4)(a).

101.    At the time of his employment, Defendants were aware of Plaintiff's membership in the United States Army National Guard Reserve.

102.    During his military service and employment with Defendants, Plaintiff served in the 431st Civil Affairs Battalion.

103.    Defendants benefitted from the skills Plaintiff gained in his military service.

104.    Plaintiff fulfilled his military requirements flawlessly and expected to be reinstated following his three weeks of training at a position he was entitled using the "escalator principle" as required by USERRA, 38 U.S.C. § 4301 et seq.

105.    Defendants were well aware of their responsibilities under USERRA as evidenced by prior dealings with this Plaintiff and others who serve in the Military Reserves.

106.    Plaintiff specifically gave Defendants prior notice before leaving for his three-week training with the military.

107.    His training did not last more than 5 years.

108.    Plaintiff made a timely application for worked upon his release from military training.

109.    Upon his return, Defendants did not return Plaintiff to his job and other rights and benefits that the employee had on the date of the commencement of his service.

110.    Specifically, Amazon has removed him from the ADP system as out on military leave pursuant to its policy to do so, thus preventing Plaintiff from working the shifts he arrived to work and earn money.

111.    As a result of the actions of Defendants, Plaintiff suffered damages.

112.    Liquidated damages in this matter are proper.

113.    Compensatory damages in this matter are proper.

114.    Punitive damages in this matter are proper.

115.    Further, this is also a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Bell is a member of a class of applicants who were denied their employment rights in violation of USERRA. 38 U.S.C. § 4303(16).

116.    Plaintiff asserts violations of USERRA on behalf of a class of all persons who were denied the benefits of employment by Defendant Amazon solely on the basis of their military status from the date of four (4) years prior to the date of the filing of this lawsuit, through the time of the trial of this case.

117.    The Class is so numerous that joinder of all members is impractical. While the exact number and identities of Class members are unknown at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that at least thirty-five (35) but as many as one-hundred (100) putative class members have worked for Defendant Amazon but been denied the

16

benefits of employment due to Amazon's policy of removing military service members out on service from their ADP payroll system, as described herein.

118.    This litigation is properly brought as a class action because of the existence of questions of fact and law common to the Class which predominate over any questions affecting only individual members, including:

(a) The policy of Defendant Amazon to not keep military service members in their payroll system thus benefitting Defendant by not having to pay these service members for work it otherwise would have to;

(b) Whether Plaintiffs and members of the Class were denied the benefits of employment for that reasons alone; and

(c) Whether the back pay owed to Plaintiff and members of the Class can easily be calculated by the rate of pay of the positions worked in and the date of denial of those pay and benefits.

119.    This litigation is properly brought as a class action because Plaintiff's claims are typical of the claims of the members of the Class, inasmuch as all such claims arise from Defendant Amazon's standard policies and practices, as alleged herein. Like all Class members, Plaintiff was injured by Defendant Amazon's policies and practices of failure return him to the benefits of employment upon his return from military service as required by USERRA.

120.    Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class litigation. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class. Further, Class Counsel is experienced in litigating class actions.

121.    A class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

A.  Common questions of law and/or fact predominate over any individual questions which may arise, and, accordingly, there would accrue enormous savings to both the Court and the Class in litigating the common issues on a class-wide instead of on a repetitive individual basis;

B.  Despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a Class action on a cost-effective basis, especially when compared with repetitive individual litigation; and

C.  No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage of this action are common to the Class.

122.  Plaintiff is aware of no members of the proposed class who have an interest in individually controlling the prosecution of separate actions; neither is Plaintiff aware of any other litigation concerning this particular controversy.

123.  Class certification is fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

124.  The class is defined as all employees of Defendant Amazon who were denied the benefits of employment by Defendant solely on the basis of their military service status by removing them from the ADP payroll system from the date of four (4) years prior to the date of the filing of this lawsuit.

## IX. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief on behalf of themselves and all others similarly situated:

a.  An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c.  Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

d.  Liquidated damages to the fullest extent permitted under the law;

e.  Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law;

f.  An order permitting a class action under USERRA and appropriate notice;

g.  Compensatory and punitive damages; and

h.  Such other and further relief as this Court deems just and proper.

## X. JURY DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: May 27, 2021

`

Respectfully submitted,

**JUSTIN BELL, PLAINTIFF**

WH Law | We Help
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891-6000

By:

Chris Burks (ABN: 2010207)
chris@wh.law

Greg Ivester (ABN: 2007257)
greg@wh.law

*Attorneys for Plaintiff and the
Proposed FLSA Collective and
USERRA Class*